STEPHANIE M. HINDS (CABN 154284)
United States Attorney

TOM COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD, <br><br> Defendant. | CASE NO. 18-CR-00465 MMC <br><br> UNITED STATES' TRIAL MEMORANDUM AND OPPOSITION TO DEFENDANT'S ORAL MOTION TO EXCLUDE CONSPIRACY EVIDENCE AS UNNOTICED EVIDENCE UNDER FED. R. EVID. 404(b) <br><br> The Honorable Maxine M. Chesney <br> Courtroom 7, 19th Floor |

# INTRODUCTION

On Thursday, March 10, 2022, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") orally moved to exclude an email, exhibit P1046, as unnoticed "other bad act" evidence barred by Rule 404(b) of the Federal Rules of Evidence. Because Jinhua's motion ignores black-letter law regarding admissible evidence in criminal conspiracy cases, the motion should be denied as to the specific items of evidence offered during Dr. Scott DeBoer's testimony on March 10, 2022, and as to other evidence that the United States anticipates it will offer from future witnesses.

# RELEVANT BACKGROUND

The United States intends to prove the full scope of the indicted conspiracy among United Microelectronics Corporation ("UMC"), Jinhua, Stephen Chen, J.T. Ho, and other individuals to manufacture DRAM in China by copying Micron's manufacturing processes. The Indictment alleges that the conspiracy to commit trade secret theft (Count 2) began "in or about October 2015." Indictment ¶ 51. It alleges that the conspiracy to commit economic espionage (Count 1) began "in or about January 2016." Indictment ¶ 17. The United States' evidence will show that in a series of meetings starting on December 7, 2015, and lasting more than two weeks, UMC managers and engineers met and went step-by-step through Micron's stolen DRAM process flow to create a process flow for Project M. By the end of the meetings, they had copied the *entirety* of Micron's multi-billion dollar process flow and translated it as best as possible to UMC's process language.

But December 7, 2015, was not the first time a member of the conspiracy took acts to prepare for the charged conspiracies. Nor was it the first time a co-conspirator sent an email message demonstrating an intent to compete against Micron by copying its process technology.

During the testimony of Micron's highest-ranking technical officer, Dr. Scott DeBoer, on March 10, 2022, Jinhua objected to the United States' motion to admit P1046. P1046 is an email message that Stephen Chen received from Yoshinori Tanaka on September 14, 2015, and forwarded to UMC's Bowen Huang on September 16, 2015—just two weeks prior to the alleged start of the conspiracy charged in Count 2 of the Indictment. Dr. DeBoer testified that the material attached to the email was

Micron's. It included an Elpida-era DRAM diagram with process information, a Micron technology roadmap, and specifications of Micron's process nodes. In the email, Tanaka writes to Chen about "your project" of which Chen would be the "big boss" and Chen's need to "hire DRAM development engineer[s]." The email and its attachment thus go to Chen's participation in the conspiracy and his intent and planning to start his "project" using Micron's technology. He knew as early as September 16, 2015—when he forwarded the email and attachment to UMC's Bowen Huang—that he would be working on DRAM at UMC and intended to do so with Micron's process technology. Notably, this same information later appears in Jinhua's submissions to governmental regulators. *See* P1039/P1039T.

## LEGAL STANDARD

In criminal conspiracy cases, evidence from outside the time period can be admissible as: (1) direct evidence of an element of the conspiracy charge, and/or (2) as inextricably intertwined background evidence necessary to offer a coherent and comprehensible story regarding the commission of the crime. Neither of these situations would be subject to Rule 404(b)'s strictures. At root, "[t]he rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment." *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011).

I.  **Evidence That Establishes An Element of the Conspiracy Charge Is Admissible Despite Fed. R. Evid. 404(b)**

The Ninth Circuit has made clear that evidence that goes directly to an element of conspiracy is admissible, regardless of Fed. R. Evid. 404(b). For example, in a stolen mail and conspiracy case, *United States v. Campbell*, the district court admitted evidence of the theft of mail on a particular day the indictment did not charge the defendant with having committed mail theft. 774 F.2d 354 (9th Cir. 1985). The Ninth Circuit affirmed, concluding that the "testimony regarding the theft was direct proof that the charged items were stolen from the mail, a necessary element for . . . the charged crimes," and therefore was not subject to Rule 404(b). *Id.* at 356. *See United States v. Testa*, 548 F.2d 847, 851 (9th Cir. 1977) (noting that, in addition to being admissible under Rule 404(b), "acts by others (and statements by others, if not offered for the truth) before or after the conspiracy may be relevant in

suggesting the existence and aims of the conspiracy charged." (citations omitted)); *United States v. Park*, 164 F. App'x 584, 585 (9th Cir. 2006) (unpublished) ("The government failed to provide direct evidence of trademark registration and use at the time Park formed her agreement with her co-conspirators. But registration and use at the time of conspiracy can be indirectly established if the government provides *evidence that trademarks for the relevant items were registered and used prior to and after the conspiracy was formed, as long as the evidence of preceding and subsequent registration and use is reasonably close to the time of the actual conspiracy*." (emphasis added)); *accord United States v. Xu*, 599 F.3d 452, 454 (5th Cir. 2010) (quoting *Park*).

## II. Evidence That is Inextricably Intertwined with the Conspiracy Charge Is Admissible Despite Fed. R. Evid. 404(b)

Even if the proffered evidence is not actually direct evidence of one of the elements of the crime charge, it may still be admitted if it is inextricably intertwined in the charged conspiracy offense. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("[W]hen it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single criminal transaction, we have generally held that the admission of evidence regarding those acts does not violate Rule 404(b)."); *accord United States v. Gilmore*, 811 F. App'x 997, 999 (9th Cir. 2020) (unpublished) (affirming admission of small amount of methamphetamine defendant possessed at time of arrest as inextricably intertwined with charge of possession with intent to distribute large amount of methamphetamine found in spare tire).

The Ninth Circuit has "recognized two categories of evidence that may be considered 'inextricably intertwined' with a charged offense and therefore admitted without regard to Rule 404(b). First, evidence of prior acts may be admitted if the evidence constitutes a part of the transaction that serves as the basis for the criminal charge. Second, prior act evidence may be admitted when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (internal citations and quotation marks omitted). In *DeGeorge*, the Ninth Circuit held that evidence of the defendant's prior loss of three insured boats was "inextricably intertwined" with the charged conspiracy and fraud scheme related to insurance fraud on a later boat loss because the "jury

would not have understood the relevance of the transactions and concealment without hearing at least some explanation for why DeGeorge could not obtain insurance in his own name" by the time of the charged transactions. *Id.* at 1220.

### III.   Fed. R. Evid. 404(b) Aims to Address "Other Acts"

These cases therefore make clear that Federal Rule of Evidence 404(b) applies only to "other" acts, not acts that directly relate to charged conduct. *See United States v. Uriarte*, 575 F.2d 215, 217-18 (9th Cir. 1978) (rejecting 404(b) objection because "[e]vidence relevant to the existence and aims of the conspiracy is admissible"). Evidence does not fall under Rule 404(b) "when the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined." *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993); *see also United States v. Cerna*, No. Cr 08-730 WHA, 2011 WL 2119304, at *6 (N.D. Cal. May 27, 2011) (Rule 404(b) was inapplicable because "the statements were in furtherance of the charged conspiracy" and "necessarily involve *charged* conduct, not *uncharged* conduct."). "The policies underlying [R]ule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts imply because the defendant is indicted for less than all of his actions." *Williams*, 989 F.2d at 1070.

As explained below, the two emails offered on Thursday, March 10, 2022, as well as future similar evidence the government intends to offer from future witnesses, should be admitted under the general principles spelled out herein.

## ARGUMENT

Stephen Chen's preparations to accumulate information about Micron's technology so he could lead Project M for UMC—and eventually Jinhua—are "inextricably" intertwined with the charged conspiracy: to steal Micron's trade secrets. There is no "other" act. *See Rizk*, 660 F.3d at 1131-32 (citing numerous cases). Evidence about Chen's preparations for Project M—specifically as they related to Micron—are necessary for the United States to show the Court the "full scope" of the Project M conspiracy, as conceived and implemented by Stephen Chen.

Importantly, the email was a mere two weeks prior to the alleged "in or about October" start of the conspiracy in Count 2. Jinhua, therefore, had ample notice that conduct from mid-September would be part of this case. It did not need separate notice under 404(b), both because (1) the evidence is not an "other" act, as it is direct evidence of the overall conspiracy to steal Micron's trade secrets as alleged in the Indictment, (2) it is necessary to offer a coherent and comprehensible story regarding the commission of the crime, and (3) the evidence is not propensity evidence of the type forbidden by that Rule.

P1046 is direct evidence of the criminal conspiracy. The email from Tanaka to Chen attached information about *Micron's* DRAM that Chen requested, and referenced Chen's "project." It discusses the change from the 2x3 to the 3x2 DRAM cell architecture—a change Scott DeBoer established was unique to Micron's DRAM technology. The clear inference is that Chen's "project"—i.e., what would become Project M—involved Micron's technology. The email shows that at least Chen, Tanaka, and UMC's Bowen Huang knew that. From the very outset, therefore, Chen conceived Project M as an effort to copy Micron's DRAM technology. *See Rizk*, 660 F.3d at 1131 ("The rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy."). *See also United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002) ("Evidence is 'inextricably intertwined' if it 'constitutes a part of the transaction that serves as the basis for the criminal charge' or was necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." (internal quotations and omissions omitted)); *United States v. Campbell*, 935 F.2d 39, 44 (4th Cir. 1991) ("closeness in time" between other act and the "commencement of the conspiracy, and the fact that two co-conspirators . . . were involved in the purchase of the truck, indicate the significance of this evidence in relation to the impending conspiracy."); *Campbell*, 774 F.2d at 356 (evidence that defendant stole mail inextricably intertwined with charges related to conspiracy and possession of stolen mail).

P1046 is necessary, in conjunction with other evidence that will be admitted in the trial, to offer a coherent and comprehensible story regarding the commission of the crime. Exactly when and how the

coconspirators obtained the Micron trade secrets they conspired to steal, and what then intended to do with the trade secrets, is necessary to form an understanding of what the conspiracy was about.

Finally, P1046 is not propensity evidence, and Rule 404(b) is directed at excluding propensity evidence. Namely, propensity evidence in the same vein as "crimes" and "wrongs." It is not directed at the mere sending of business emails. *See* Fed. R. Evid 404(b) (titled "Other Crimes, Wrongs, or Acts"); 22B Fed. Prac. & Proc. Evid. § 5245 (2d ed.) (early opinions of Rule 404(b) support interpretation of "other acts" as only covering "conduct that resembles crimes or wrongs" and noting that such a reading was supported by the "California provision that describes the rule as dealing with 'misconduct'"). Under Jinhua's interpretation, the terms "crimes" and "wrongs" would be superfluous, because all crimes and wrongs are also "acts."

Chen receiving and then forwarding Micron's technology (not alleged to be a trade secret) does not reveal anything about a character trait or Chen's propensity to do anything. It simply goes to the crime with which Jinhua and Chen are charged. The evidence in P1046, therefore, is not the type of evidence covered by Rule 404(b). *See United States v. Sanchez-Robles*, 927 F.2d 1070, 1078 (9th Cir. 1987) (report showing border crossings did not show "wrongs or acts showing character"); *United States v. Kearns*, 61 F.3d 1422, 1427 (9th Cir. 1995) (Rule 404(b) did not apply because "[t]he deeds do not constitute 'other acts' evidence because they do not show wrongs or acts showing character."); *Campbell*, 935 F.2d at 39 (testimony about the purchase of a truck that was used for drug distribution did not "even fall[] within the ambit of Rule 404(b) because the testimony "in no way intimated prior bad conduct of [the defendant] or his propensity to distribute crack"); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) ("Rule 404(b) excludes the evidence if its relevance to "another purpose" is established *only* through the forbidden propensity inference.").

Accordingly, P1046 is within the heartland of appropriate evidence to be admitted.

UNITED STATES' MEMO. AND OPP.  
TO DEF.'S MOT. TO EXCLUDE  
18-CR-00465 MMC

6

# CONCLUSION

For the reasons set out above, the United States is entitled to introduce evidence of a conspiracy without the notice requirement in Federal Rule of Evidence 404(b).  Exhibit P1046, offered on Thursday, March 10, 2022, should thus be admitted, and these general principles should govern the admission of future similar exhibits.

Dated: March 14, 2022

Respectfully Submitted,

STEPHANIE M. HINDS
United States Attorney


      /s/
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division