**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
  VS.                         )  **NO. CR 18-00465 MMC**
                              )
UNITED MICROELECTRONICS       )
CORPORATION, INC., et al.,    )
                              )
          Defendants.         )
_____)

San Francisco, California
Wednesday, September 21, 2022

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)

For Plaintiff:
           STEPHANIE M. HINDS
           UNITED STATES ATTORNEY
           450 Golden Gate Avenue, 11th Floor
           San Francisco, California 94102
  **BY:** **LAURA E. VARTAIN HORN**
       **NICHOLAS J. WALSH**
       **ASSISTANT UNITED STATES ATTORNEYS**

           U.S. DEPARTMENT OF JUSTICE
           National Security Division
           950 Pennsylvania Ave, N.W.
           Washington, DC 20530
  **BY:** **STEPHEN MARZEN**
       **NICHOLAS O. HUNTER**
       **TRIAL ATTORNEYS**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported by:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              CSR No. 12219, Official U.S. Reporter

```
 1  APPEARANCES:   (CONTINUED)

 2  For Defendant Fujian Jinhua
    Integrated Circuit:
 3                          SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
 4                          525 University Avenue, Suite 1100
                            Palo Alto, California 94301
 5                     BY:  JACK P. DICANIO, ATTORNEY AT LAW
                            EMILY A. REITMEIER, ATTORNEY AT LAW
 6
                            SKADDEN, ARPS, SLATE, MEAGHER
 7                              & FLOM LLP
                            300 South Grand Avenue
 8                          Los Angeles, California 90071
                       BY:  MATTHEW E. SLOAN, ATTORNEY AT LAW
 9
```

**Wednesday - September 21, 2022**                                      **10:01 a.m.**

**P R O C E E D I N G S**

---o0o---

**THE CLERK:** Calling Case Number 18-465, United States of America versus Fujian Jinhua Integrated Circuit.

Will counsel please state your appearances for the record, starting with Government counsel.

**MS. VARTAIN:** Good morning, Your Honor. Laura Vartain, Nicholas Hunter, Steve Marzen, and Nicholas Walsh for the United States.

**THE COURT:** Good morning.

**MR. DiCANIO:** Good morning, Your Honor. Jack DiCanio, Matthew Sloan, and Emily Reitmeier for Jinhua.

**THE COURT:** Okay. Good morning, everyone.

As you know, we have a date for the continued, you know, trial coming up. And it seemed a good idea, perhaps before everybody, you know, showed up that we would get a preview as to whether there has been any change in the situation from the last time that we met.

The one change is, in the interim, the Government counsel has filed a motion to, essentially, deem the matter submitted and set the case for closing argument.

I didn't expect you to be responding to that immediately. But there's a long, you know, laying out of the history of the

1  case, and then the discussion of the law that would be
2  applicable.
3      I didn't see anything that seemed incorrect in the sort of
4  historical summary, but I haven't looked through it in -- you
5  know, every single point to cross-check it, but, generally, it
6  conformed to my recollection.
7      So what can you tell us, if anything, Mr. DiCanio?
8          **MR. DiCANIO:**  Thank you, Your Honor.
9      Yeah.  And I also reviewed the Government's status report.
10 I guess I would say that it seems to be more of a regurgitation
11 of objections that they've made in the past and we have had a
12 lot of argument on, so I don't really see anything new.  But we
13 will be filing something in response just for the record,
14 Your Honor; but I don't think there's anything really knew in
15 there.
16     In terms of --
17         **THE COURT:**  Well, it may be a similar argument, but
18 now it's based on whatever the current circumstances are, so --
19         **MR. DiCANIO:**  Correct.
20         **THE COURT:**  So it's kind of building, shall we say.
21     Okay.  Go ahead.
22         **MR. DiCANIO:**  So in terms of where we are, Your Honor,
23 I just checked, just before the Court started, and still no
24 word from the Chinese authorities as of this morning.
25     And so in response to the Government's request to kind of

1  restart the trial, I guess I have two points to make:
2      The first one is that the letters rogatory were received
3  by the Chinese authorities in -- a relatively short period of
4  time ago.  I think the first letter rogatory, Your Honor, was
5  actually received on or about August 4th, so I would say
6  roughly about seven weeks; and the second one was received on
7  August 17th, roughly about five weeks.  So a relatively short
8  time ago.  And as we've discussed -- and the Government has
9  noted a couple of times -- sometimes those things take some
10 time to process.
11     But I don't think that's what's really going on here.  And
12 that leads to my second point.  If the Court recalls, in
13 connection with the second letter rogatory, the Chinese
14 Ministry of Justice actually sent two letters to Your Honor
15 kind of explaining their analysis and why they felt there was a
16 need for a letter rogatory.
17     And, second, they also made a request to my client -- that
18 I reiterated to Your Honor as well as to the Government --
19 about the manner in which they could receive that order from
20 the Court so they could act on it more quickly.  And we took
21 that -- I took that as a very, very good sign that they were
22 engaged and they were likely to grant the request, given kind
23 of the level of dialogue and their level of involvement; and I
24 still believe that.
25     I think what happened in the interim was there was the

1  trip by Speaker Pelosi to China, which caused -- and then I
2  think it was followed by a couple of different congressional
3  delegations, and then a couple of governors who traveled to
4  China, which created an increase in the tensions between the
5  two countries.  And I've subsequently learned from the media
6  that China has put on a suspension on all requests for judicial
7  assistance between the two countries.  So the tensions between
8  the two countries are at a heightened state.
9      Now, Your Honor, we had hoped that our request would not
10 fall within that suspension order; and I don't know whether it
11 is or is not, but we still haven't heard.
12     I think, at this point, it's fair to think that somehow
13 all of that disruption and all of that sensitivity in the
14 relations is impacting the trajectory of our issue in some way.
15 That's my guess from -- from reading the tea leaves here.
16     And so -- but I do still feel that if we could get to the
17 other side of that, that we would likely get approval and be
18 able to move forward.
19     So the second point I wanted to make to the Court was --
20 and, Your Honor, you have been incredibly patient and gracious
21 in terms of working through all of the issues that we have had
22 with our witnesses throughout the proceeding.  And,
23 unfortunately, we need to come back and ask for an additional
24 extension.  And what I would request, Your Honor, is in early
25 November.

1    And the reason for that -- the reason that I think that
2 that might be a date by which we would have an answer is, there
3 is a national election in China that is scheduled for the
4 middle of October, as well as a very significant party meeting.
5 It is our hope that on the other side of that, that there'll be
6 more clarity on this issue, and we'll be able to get a -- kind
7 of a more definitive response.  And I believe that response is
8 going to be an affirmative response so that we could move
9 forward.
10    Your Honor, at this point in time, that's really all of
11 the update that I have.  All I can do is to reiterate what
12 we've said in the past about the significance of our witnesses.
13    We have waited.  The Court has been gracious in waiting
14 several months now in order to restart the trial.  I guess
15 we're asking for a little bit more -- the Court's indulgence
16 for a little bit more so that we have a little bit better
17 chance to try to secure the attendance of these witnesses.
18    Again, our reading of the tea leaves thinks that, on the
19 other side of that party meeting and election, perhaps we could
20 get more clarity given the tensions between the two countries.
21    **THE COURT:**  Okay.  Thank you.
22    I'm not going to rule on this today.  I have a formal
23 motion filed, a written motion, detailing the Government's
24 position as to why the clock should be deemed to have run out.
25    I intended today to give you an opportunity to respond in

1  writing and to have the Government file a reply; in other
2  words, to set a briefing schedule on that, to not -- I'm either
3  going to vacate that so-called, you know, trial that we have
4  scheduled coming up or -- I'm not going to continue it to any
5  date at this point.  I'm just -- it's -- that will happen if it
6  appears that your position is a position that's more persuasive
7  than the Government's.  If it's not, then I'm going to set a
8  date for closing argument.
9       So -- and, of course, I have your motion also.  You know,
10 there's -- there's a written motion that's been briefed on the
11 motion for judgment at the close of the Government's case.
12      So in any event -- but I don't have to make a ruling now.
13      I did notice, as you pointed out, that not a lot of time
14 has gone by since the letters rogatory ultimately were
15 delivered in their official form to the authorities in China.
16 The Government's position has been based -- in their recent
17 motion, it may not have been stressed before, but their
18 position is:  It's just not going to make any difference.
19      So we could wait a month.  We could wait three months.
20 It's just -- nothing is going to happen.  And if you have
21 evidence that suggests to the contrary, of course, that might
22 be a focus that you may have.
23      There are a number of things that come to mind.  I don't
24 know that this is the, you know, time to be discussing them.
25 In ticking off the various factors that the Court considers,

1   the Government goes back to their -- their initial point that
2   there was a lack of diligence here on the part of defendants'
3   counsel.
4       I'm not sure whether it's on the part of defendants'
5   counsel, but I have a real question about the client.  Okay?
6   Because in all the conversations that were held, including,
7   apparently, conversations about these people being afraid to
8   show up here -- independent of any illness, all right? -- just
9   afraid to show up here because they thought they would get
10  arrested unfairly in some way and they wanted some kind of
11  commitment from the Government -- did anyone say to them at
12  that point:  But you are coming, of course, if you get this
13  safe passage, aren't you?
14      At which point you think they would have said:  No, I'm
15  not coming anyway because I'm sick, and COVID is there.
16      And I just can't imagine why they didn't volunteer this.
17  And you might be thinking about that too, because whether
18  counsel should have thought to say when nobody appeared to have
19  any kind of physical disability, "Do you have a physical
20  disability that may make it tough for you to fly here, given
21  the length of the flight, and whatever we're knowing about
22  airplanes?" -- that you'd think these people would have said
23  something.
24      We're not dealing with peasant farmers.  These are high
25  level -- high level businesspeople, and people involved in the

Government.

And I'm just saying that even if there were not any fault on the part of Defense counsel -- and there may not be -- that there seems to be something here that's not coming forward from the client that ought to have in the ordinary course of discussion if you just kind of play out any conversation that anybody might have had behind the scenes.

So it's just -- I want you to think about that, plus you're -- the other arguments you want to make about why the Government says it's just, you know, it's a futile effort and we should just, you know, put everyone out of their misery at this point. So -- okay.

I don't know that there's much else we can do right now.

Certainly, it didn't help that, you know, the speaker went to Taiwan. And I think that we have the president making announcements about coming to Taiwan's aid if there should be any aggression on the part of Mainland China; I mean, it's not helping the situation.

And, of course, the Government will go back to saying this could have all been avoided if you just let us all know this earlier before everything started going downhill in this, you know, progressive fashion.

Okay. Very interesting. Okay. And I'm not sure that I'm accepting that the witnesses are not important. I think they do have relevant -- relevant testimony. I would like to hear

1   it if it's possible; but, of course, if it's not going to
2   happen in any reasonable lifespan of any of us, then it just
3   doesn't seem like we should wait around.
4        So let's think about a briefing schedule.  Have you
5   thought at all about when you might have, you know, an
6   opposition; and then I give Ms. Vartain, of course, a chance to
7   reply.
8            **MR. DiCANIO:**  Sure, Your Honor.  And thank you for the
9   opportunity to brief it.
10       Because we would have to kind of also run kind of our
11  drafts with counsel and the client, would it be okay if we had
12  until Monday of next week to submit our opposition?
13           **THE COURT:**  I'm not trying to rush you on this.  The
14  ordinary briefing schedule on a motion could be two weeks out
15  for an opposition.  So I mean, if you -- that's, you know, the
16  typical notice motion, 35-day briefing schedule, we could
17  adhere to that or we could do something different.
18       I don't think the Government is saying that, you know, you
19  have to respond tomorrow.  They just want a date when this case
20  is going to be wrapped up, and within reason, you know.  But
21  I'm not trying to put a fire under you.  But I don't --
22  you know, there's no point in dawdling because, you know, it's
23  like any day isn't going to make a big difference here or
24  there.  Okay.
25           **MR. DiCANIO:**  So, Your Honor, given the significance

1  of the briefing, we would like to have a regular briefing
2  schedule if the Court is amenable to that.  I wasn't quite sure
3  how quickly you wanted us to move.
4              **THE COURT:**  No.  I'm not trying to -- my feeling is
5  not that this is a matter of an emergency nature.  It's a
6  matter of real concern that needs to be resolved in a
7  reasonable time frame.
8        But it's not like somebody is going to chop down a giant
9  sequoia and we need, you know, injunctive relief of some sort.
10 I mean, it's not that kind of situation.  But I don't want to
11 just drag everybody -- you know, we shouldn't be dragging our
12 feet.
13       Let's just talk about the upcoming trial date.  Should
14 that be vacated?  I mean, you know --
15             **MS. VARTAIN:**  Yes, Your Honor.
16             **MR. DiCANIO:**  We would say, yes, Your Honor.
17             **THE COURT:**  That was scheduled for the 27th; correct?
18             **MS. VARTAIN:**  Yes.
19             **MR. DiCANIO:**  Yes.
20             **THE COURT:**  So the current trial date of September 27
21 is vacated for the reason that we don't have any witnesses.
22       Okay.  And, yes, I could say:  All right.  That's closing
23 argument day.
24       But it's not going to be closing argument day.  We're
25 going to give you a chance to brief all this.

| | |
|---|---|
| 1 | So let's just see where we are.  The motion was filed on |
| 2 | the 20th.  So okay.  So just yesterday.  But if we just used |
| 3 | today, you would be looking at, I guess, what?  October 5, |
| 4 | something like that; is that a couple of weeks from today? |
| 5 | **MR. DiCANIO:**  Yes, Your Honor. |
| 6 | **THE COURT:**  And then, what do you want for reply then? |
| 7 | You want more than a week, Ms. Vartain?  It doesn't matter |
| 8 | to me. |
| 9 | **MS. VARTAIN:**  I don't because if the Court will |
| 10 | indulge me on talking about next dates -- even though I know |
| 11 | the Court isn't ruling today, I do think it's relevant to the |
| 12 | briefing schedule. |
| 13 | Government counsel, for various reasons, including some |
| 14 | health reasons and other schedules, enters a period of |
| 15 | unavailability at the end of October. |
| 16 | **THE COURT:**  Is that you? |
| 17 | Is that -- "Government counsel," is that you, you're |
| 18 | saying? |
| 19 | **MS. VARTAIN:**  I enter a two-week period of |
| 20 | unavailability beginning October 20th.  And my counsel have |
| 21 | other -- other matters, including new trials, starting.  So I |
| 22 | was -- I am interested in finding some date that we are likely |
| 23 | to come back, and building that into the briefing schedule. |
| 24 | My proposal was to try to wrap up before I'm unavailable |
| 25 | beginning October 20th. |

```
 1          THE COURT:  I think that may be -- that might be fast,
 2  but let's see.  Okay.
 3      You're only going to be gone for a couple of weeks?  Or
 4  more?
 5          MS. VARTAIN:  I don't know.  I'm having a medical
 6  procedure.  I expect it to be about a two-week recovery.
 7          THE COURT:  Oh.  I'm sorry to hear that.
 8      Okay.  All right.  So 21 -- five -- well, that'd be the
 9  12th if you were on a regular briefing schedule.  It wouldn't
10  give me two weeks before the 20th, though.  It would only give
11  me a week before you -- what was the date you were, again,
12  going to be taking off?
13          MS. VARTAIN:  The 20th, Your Honor.
14          THE COURT:  The 20th.  Yeah, that only gives me a week
15  to look at it.  Also -- and that may be enough time.
16      Let me just take a look here, also, at what would be going
17  on.  I have -- and I also, during that period, I have a jury
18  trial that is going to be so spread out because there's court
19  holidays; and there's Yom Kippur; I don't have juries on
20  Friday.  Oh well.
21      Yeah.  So we can try.  You know, we can try to see if we
22  can get that done.  That means that if we wanted to -- let's
23  see, if I just changed it slightly.  I don't know that it makes
24  a lot of difference whether we run this from the 20th or the
25  21st.
```

1   If we did it two weeks from the 20th, it would be due --
2   the opposition would be due on the 4th.  The reply -- and
3   there's a holiday in there on the 10th, but the reply would be
4   due the 11th.  You would be, you know, kind of short a day
5   there.  And then I could have the hearing, maybe, on the 19th.
6   Let me see what -- am I through with that trial by then?
7   Oh.  And -- no.  I might not be through with the trial by the
8   19th.  Wow.  And it's not settling.  As far as I can tell, we
9   are definitely going.  It should settle, but it's not.
10  The 19th is just not a good day.  And the -- the 18th I'm
11  almost for sure going to be in this trial.
12  And the 20th is your last -- you're gone already by the
13  20th?
14  **MS. VARTAIN:**  Yes.
15  **THE COURT:**  I don't know.  I don't know that I can
16  hear this on the 19th.
17  I'm not sure what we ought to do in that respect.  I
18  mean -- and the 18th, I'm -- even if I set it for the 19th --
19  and if I did, it would have to be in the afternoon for a couple
20  of reasons.
21  The other possibility is, well see I think I'm still going
22  to be in trial on the 18th.  Primarily because of all these,
23  you know, between regular holidays, Jewish holidays -- okay.
24  Maybe I should just say the afternoon of Wednesday the
25  19th, at -- I don't know -- 2:00, maybe.

|   |   |
|---|---|
| 1 | I may have to get back to you depending on how that trial |
| 2 | is going. |
| 3 | For now, I'm going to just put down hearing -- so, |
| 4 | Mr. DiCanio, I'm going to run the two weeks from yesterday, the |
| 5 | day it was filed, instead of today -- okay? -- because also -- |
| 6 | **MR. DiCANIO:**  Thank you, Your Honor. |
| 7 | **THE COURT:**  Because also the Government is getting |
| 8 | short a day otherwise anyway because of the holiday.  So -- |
| 9 | okay. |
| 10 | All right.  So the briefing schedule is then the two weeks |
| 11 | from yesterday; a week from that; and then -- and then that |
| 12 | short -- shortened time to have a hearing. |
| 13 | If this doesn't work out on scheduling -- and, hopefully, |
| 14 | Ms. Geiger, as we're starting to move, you know, forward on the |
| 15 | trial, that -- if you think to, maybe, remind me -- in fact, |
| 16 | I'll make a note also to, maybe, update counsel in this case |
| 17 | regarding the status of our trial. |
| 18 | **THE CLERK:**  Your Honor, do you want the hearing on the |
| 19 | 19th by Zoom or in person? |
| 20 | **THE COURT:**  By Zoom.  Yeah.  Yeah.  Let's just do it |
| 21 | by Zoom. |
| 22 | **THE CLERK:**  Okay. |
| 23 | **THE COURT:**  Particularly, if it had to be changed in |
| 24 | any way, I don't want people to, you know, be planning on |
| 25 | having to be here. |

1    Okay. And then -- okay. Let me just think for a minute.
2    If it can't be heard then, what we can do -- I know
3 because, Ms. Vartain, you're going to want to be present for
4 whatever hearing there is, I'm assuming -- that you would
5 rather have the hearing later if it couldn't be within the time
6 that -- before you take your time off there. I'm assuming you
7 would rather have it later than go forward without your being
8 able to be present; but, you know, if you change your mind on
9 that, that's fine too.
10   Otherwise, I think if it weren't for the fact you were
11 going to be off, I would just have this a little later as a
12 hearing. And then if it turns out that date isn't going to
13 work, we can put it over until after you're back. I mean, I'm
14 hoping -- I don't want to pry into your personal situation, but
15 I'm hoping that you would be back and that with a little just,
16 you know, sort of catchup once you're back -- not the day you
17 come back have a hearing -- but we'd have a hearing and still
18 be moving -- you know, moving the case along.
19   So just keep all those, you know, kind of options of where
20 you might want to go with what if this turns out not to be
21 totally workable.
22   Now, I'm letting you leave all your stuff in the
23 courtroom. These poor people coming in for another trial,
24 although they will have tech people displaying stuff, they
25 don't need the space there where the long table is.

1    And Ms. Geiger, you know, you really owe her one.  She
2 went in and personally moved boxes out of the way, all those
3 boxes over on the -- frankly, the defendants' side over there,
4 on the far side of the courtroom -- so that there would be less
5 of an impeded passageway.
6    And I told the lawyers I would explain to the jury that
7 that stuff is not theirs and that the court is not being
8 cluttered up because of them.  So they were appreciative of
9 that.  And then this way we won't disrupt any of your materials
10 that are there.  Okay.
11    **MR. DiCANIO:**  You know, Your Honor, if you would like
12 us to remove the boxes -- I'm so sorry.  I wasn't even focused
13 on that stuff, to be honest with you.  But I'm sorry that
14 you're dealing with that and that Tracy's dealing with it.  If
15 you'd like us to remove it from the court, we will.
16    **THE COURT:**  I think they're out of the way now.  We
17 felt that they could be put in a place where people don't have
18 to walk.  And I had thought that Ms. Geiger was going to get
19 somebody to help her, and then found out that she hefted them
20 all herself, so -- anyway.  Okay.
21    So I think that we may have done all we can do today; but,
22 again, I say that and then I still want to find out if anybody
23 has got any ideas about anything else we should deal with.
24    **MR. DiCANIO:**  Nothing from me.  Thank you, Your Honor.
25    **MS. VARTAIN:**  Thank you, Your Honor.

1  **THE COURT:** All right. And without knowing any more
2  I'm just -- you know, wish you the best, Ms. Vartain, on
3  whatever is coming up.
4  **MS. VARTAIN:** Thank you. I appreciate it.
5  **THE COURT:** All right. Thank you.
6  Then we are in recess until our next matter this morning.
7  **THE CLERK:** Court is in recess.
8  (Proceedings adjourned at 10:28 a.m.)
9  ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Thursday, September 22, 2022

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court